# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

CHARLES MCCOY,

      Petitioner,

v.

MICHAEL SHEETS, Warden,

      Respondent.

CASE NO. 2:08-cv-1051
JUDGE MARBLEY
MAGISTRATE JUDGE KEMP

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's reply, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On July 30, 2004, the Licking County Grand Jury indicted appellant on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, one count of attempted murder in violation of R.C. 2903.02(A)(1) and R.C. 2923.02, a felony of the first degree, one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, and two counts of kidnapping in violation of R.C. 2905.01(B), felonies of the first degree. Thereafter, on August 5, 2004, appellant entered written pleas of not guilty and not guilty by reason of insanity.
>
> As memorialized in a Judgment Entry filed on October 20, 2004,

appellant was found competent to stand trial. Subsequently, a bench trial commenced on February 7, 2005. The following testimony was adduced at trial.

Teresa Miller is a manager at a Dairy Queen in Heath, Ohio. Prior to working at Dairy Queen, Miller had worked with appellant at Taco Bell. Miller testified that she had known appellant for approximately fifteen years and that the two worked together for a short time at the Dairy Queen. While the two were friends at first, Miller later came to believe that appellant was romantically interested in her. Miller, who is married, was not interested in appellant.

On July 23, 2004, Miller and Heather Bonifant, another Dairy Queen employee, were cleaning the Dairy Queen after closing. At one point, Heather took the trash outside and, when she returned, appellant walked in after her with a knife. At the time, appellant, who had a bluish duffle bag, was no longer employed by Dairy Queen. Appellant then shut the back door and ordered the two women to the back part of the store, where he had them get down on the floor. Appellant also had one of the women turn all of the lights off.

At trial, Miller testified that appellant then ordered them to crawl from the back of the store to the safe in the office. While Miller was crawling, appellant kicked her in the side and called her a "bitch" a couple of times. Transcript at 20. After Miller fell over after being kicked, appellant yelled at Miller to get up and bashed her in the back of her head. After Heather Bonifant asked appellant to stop beating Teresa Miller, appellant hit Heather in the face around her eye. Appellant then ordered the two women to open up the safe in the office and find something to put the money in. Once in the Dairy Queen office, appellant ripped the telephone cord out of the wall. During the incident, appellant "would make comments like, he tried to be my fucking friend for 15 years and I was nothing but a bitch to him. He made a comment about me being married to a fat, ugly bald bastard." Transcript at 23.

Miller also testified that, just prior to July 23, 2004, appellant had called her and told her that he needed some money and

2

had asked Miller if there was anything that he could do at Dairy Queen for cash under the table. Miller told appellant that she was unable to help him. Miller stated that, after the money was loaded into two bags, "... he [appellant] had got in my face, and his eyes were all bloodshot and he smelled of alcohol, and he said-sorry. He said I called you yesterday, and I know my face was probably showing I didn't know what he was talking about, but I didn't let that on because I didn't want to make him madder. He said I called you yesterday, don't play stupid with me. And then he referred to you couldn't even help a friend out, and I was thinking that's what he was in reference to was the phone call a few days prior to that." Transcript at 24.

Appellant then told the two women that the three of them were going to go for a ride. As the three walked out of the Dairy Queen, appellant held a knife to Miller's neck and told her to act normal and not to "try anything stupid." Transcript at 25. When the three got to the parking lot, Miller yelled "run" and both Miller and Bonifant tried to get away. However, Miller was unable to get away from appellant, who stabbed her in the back and stabbed her again while she was on the ground. Appellant, while stabbing Miller, called her a "bitch." Miller was finally able to get away from appellant. The bags of money were later found in the parking lot.

When questioned about her injuries, Miller testified that she had two stab or slice wounds down the front of her left leg, two on her shoulder and one on her lower back. Miller further testified that her finger got sliced open and that she had "scars everywhere." Transcript at 34.

Heather Bonifant, who had known appellant for about four and a half years, also testified at trial. Bonifant testified that she went to take the trash out and that as she turned around after dumping the trash, appellant grabbed her by the throat, pushed her against the dumpster, stuck a knife with a light colored handle to her stomach, and told her that they were going to go inside and talk to Miller. According to Bonifant, as they were proceeding to the Dairy Queen office, appellant "kept kicking Teresa and hitting her and just cussing at her."

Transcript at 81. Bonifant further testified that, at one point, appellant pointed the knife at Miller and said "You know, I should just slit your throat right here." Transcript at 82.

According to Bonifant, after the money was in the bags, appellant said "What, you think you bitches are getting out of this alive?" Transcript at 83. Bonifant further testified that appellant threatened to stab one if the other ran. Once she was able to get away from appellant, Bonifant tried to hit appellant with the bags of money and then went back into the Dairy Queen, plugged in the telephone, and called 911. At trial, Bonifant testified that appellant was wearing dark gloves during the incident and that he left a bluish or gray duffle bag inside the Dairy Queen near the back door. Once the police arrived on the scene, Bonifant gave the duffle bag to the police. The duffle bag contained a bandanna, rope and masking tape.

Newark Police Sergeants Pritt and Baum responded to the report of a stabbing at the Dairy Queen. While they were trying to locate appellant, the officers learned that appellant's mother lived in the City of Newark. After speaking with appellant's mother in Newark, the officers ultimately located the boarding house where appellant supposedly resided. While looking through the window of a car parked at such address, the officers saw a pearl handled knife in an open position on the dashboard that appeared to have blood on it and also some brown work gloves on the passenger side floor. The officers also observed a white bag on the back floor. When the officers went to the upstairs apartment where appellant resided, they knocked on the door and appellant opened the same. Appellant was later arrested.

Dr. Randy Jones, who works in the emergency department at Licking Memorial Hospital, testified that when Teresa Miller arrived at the emergency room, she had multiple stab wounds. According to Dr. Jones, Miller had a stab wound on her left upper back, one on her left shoulder, several on her left hand, and what appeared to be two stab wounds in her left shin area. In addition, appellant had a stab wound near where her ribs met her spine. After a CAT scan of appellant's belly revealed that appellant had a retroperitoneal hematoma, appellant was

transferred to another hospital with a trauma designation. The following is an excerpt of Dr. Jones' trial testimony:

"Q. Did the injuries to her, in your opinion, involve any physical harm that carries a substantial risk of death?

"A. Certainly the two-the left upper back was potential mainly for penetrating the lung. Even more concerning was the one in the costovertebral angle that I described, mainly bleeding to death from the hematoma that I described.

"Q. So either one of those would qualify under that definition?

"A. Correct.

"Q. How about any physical harm that involved some temporary, substantial incapacity?

"A. Any of them certainly could fall under that category. It's difficult to know in the initial assessment whether that would, but certainly, again, the two in the back could fall under that category.

"Q. Any physical harm that involved some permanent disfigurement or that involves some temporary serious disfigurement?

"A. Almost all of them could fall under that category because they're all going to be leading to scarring and so that would-all those apply.

"Q. Finally, any physical harm that involves acute pain of such duration as to result in substantial suffering or involves some degree of prolonged or intractable pain?

"A. Certainly the first part. You can see from the records we gave repeated doses of morphine to her at her request because the pain was just quite extensive, quite severe. So certainly the first part of that is true from my standpoint and, you know, all of these can carry the possibility of prolonged pain. I don't know what happened with her, but they could certainly have a possibility." Transcript at 230-232.

After the trial court denied his Crim.R. 29(A) motion for judgment of acquittal, appellant took the stand. Appellant testified that he had a prior 1994 felony conviction and that, prior to July 23, 2004, he went to the Heath Police Department to talk with Sergeant April Martin about filing a lawsuit relating to an incident the night before. Appellant testified that he was admitted to a psychiatric facility when he was twelve (12) years old and when he was fourteen (14) years old.

When questioned about the events of July 23, 2004, appellant testified that he had been drinking alcoholic beverages all day that day starting at 2:00 or 3:00 p.m. and that he went to the Dairy Queen around 11:00 p.m. to try to borrow money from Teresa Miller. While appellant admitted having a knife with him, he denied taking it out of his back pocket and denied telling Heather Bonifant that he had a knife. Appellant also denied that he forced Heather into the Diary Queen, that he had his arm around her neck with a knife to it and that he had a duffle bag with him, although he admitted having a duffle bag in his car. When asked, appellant testified that he did not open his knife while outside with Heather Bonifant and that he never told anyone to get on the floor of the Dairy Queen or to turn the lights out.

Appellant further testified that he did not threaten either Heather Bonifant or Teresa Miller and did not force either woman to leave the Dairy Queen. Appellant also testified that he did not ask either one to get money out of the safe and that the two women "were assuming it, and me just coming from The Cedar [a bar] and drinking as much as I had been, they assumed it." Transcript at 254. According to appellant, he never grabbed a hold of any money bag, put the money bag into his car or wore gloves. Finally, appellant testified that he did not restrain the liberty of either women in any way.

At the conclusion of the evidence, the trial court, on February 8, 2005, found appellant guilty of all of the counts contained in the indictment. As memorialized in a Judgment Entry filed on the next day, the trial court sentenced appellant to an aggregate sentence of thirty (30) years in prison.

*State v. McCoy*, 2006 WL 39100 (Ohio App. 5th Dist. January 5, 2006). Petitioner filed a timely appeal, in which he asserted the following assignments of error:

> I. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO DISMISS COUNTS 4 & 5 OF THE INDICTMENT TO THE EXTENT R.C. 2905.01(B)(1) IS CHARGED THEREIN.

> II. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT DUE TO APPELLANT BEING INTOXICATED.

> III. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO DISMISS COUNT 1, INDICTMENT.

> IV. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE OBTAINED AS A RESULT OF ERRONEOUSLY ISSUED SEARCH WARRANTS.

> V. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO FIND THAT THE ARREST OF APPELLANT WAS UNLAWFUL.

> VI. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR ACQUITTAL AS TO COUNT I.

> VII. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN FAILING TO FIND THAT COUNTS 1, 2, 3, AND 4 ARE ALLIED OFFENSES OF SIMILAR IMPORT (R.C. 2941.25(A)) AND SUBJECT APPELLANT TO ONE (1) CONVICTION.

> VIII. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT.

IX. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FINDING APPELLANT GUILTY OF ATTEMPTED MURDER AND SENTENCING HIM FOR SUCH.

X. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FINDING APPELLANT GUILTY OF COUNT 4 AND/OR 5.

XI. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN ITS SENTENCING OF APPELLANT.

*See id.* On January 5, 2006, the state appellate court affirmed the trial court's judgment. *Id.* Petitioner did not file a timely appeal; however, on March 4, 2008, he filed a motion for delayed appeal. *Exhibit 21 to Return of Writ.*[1] On April 23, 2008, the Ohio Supreme Court denied petitioner's motion for delayed appeal. *State v.McCoy*, 117 Ohio St.3d 1475 (2008); *Exhibit 23 to Return of Writ.*

Represented by new counsel, on April 12, 2006, petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). *Exhibit 18 to Return of Writ.* He asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal the following claims:

1. The trial court violated the constitutional rights of the defendant-appellant through the imposition of consecutive sentences herein based on factual findings not made by a jury.

2. The sentencing of the defendant-appellant to consecutive terms of imprisonment is not sufficiently supported by the

---

[1] Petitioner apparently attempted to file an appeal to the Ohio Supreme Court earlier; however, in a letter dated January 17, 2007, the Clerk of the Ohio Supreme Court returned his filing for failure to comply with the Rules of Practice of the Supreme Court of Ohio. *See Attachments to Exhibit 21 to Return of Writ.*

record created below as the trial court improperly relied upon
statutory provisions in the imposition of sentence.

*See id.*  On May 9, 2006, the appellate court denied petitioner's Rule 26(B) application.

*Exhibit 20 to Return of Writ.*  Petitioner apparently never filed an appeal of the appellate

court's decision to the Ohio Supreme Court.[2]

Represented by counsel, on November 6, 2008, petitioner filed the instant petition

for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody

of the respondent in violation of the Constitution of the United States based upon the

following grounds:

1.  The Ohio Courts entered decisions that were contrary to
*Blockburger v. United States* by ruling that Mr. McCoy's
protections against double Jeopardy were not violated and that
his convictions for attempted murder and felonious assault
were not allied offenses of similar import.

2.  The Ohio Courts rulings resulted in a finding that Mr.
McCoy was not intoxicated and, therefore, able to give a
voluntary statement – an unreasonable determination of the
facts in light of the evidence presented in the trial court's
suppression hearing.

3.  The Ohio Courts entered decisions that were contrary to
*Jackson v. Virginia* in finding that the evidence was sufficient to
support the convictions for felonious assault and attempted
murder.  Mr. McCoy also submits an argument in support of
the district court accepting this case as timely filed under the
doctrine of equitable tolling.

It is the position of the respondent that this action is barred by the one-year statute of

_____

[2] Petitioner indicates that he filed several post conviction actions in the state trial
court, but that those actions are not related to this petition.  *See Petition*, at 5.

limitations under 28 U.S.C. §2244(d) and alternatively, that his claims are procedurally defaulted and without merit.

## STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 imposed a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final on February 19, 2006, forty-five days after the Ohio

Fifth District Court of Appeals' January 5, 2006, dismissal of his direct appeal, when the time period expired to file a timely appeal to the Ohio Supreme Court. *Searcy v. Carter*, 246 F.3d 515, 518-19 (6th Cir. 2001); Ohio Supreme Court Rule of Practice II, Section 2(A)(1)(a).[3] Assuming that petitioner's Rule 26(B) motion tolled the running of the statute of limitations from April 12, 2006, to May 9, 2006, *i.e.*, the time period during which such action remained pending in the state courts, *Lawrence v. Florida*, 549 U.S. 327 (2006), the statute of limitations expired 313 days later,[4] on March 18, 2007. Petitioner waited to file this instant habeas corpus petition more than one year and seven months later, on November 6, 2008.

Petitioner acknowledges that his habeas corpus petition is untimely. He nonetheless contends that equitable tolling of the statute of limitations is appropriate. *See Petition; Petitioner's Reply.*

"[P]etitioner bears the ... burden of persuading the court that he or she is entitled to equitable tolling." *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). Equitable tolling should be used sparingly. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (citations omitted). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that

---

[3] Both parties mistakenly indicate that petitioner's judgment of conviction became final in February 2005, rather than February 2006. *See Return of Writ, at 11; Petitioner's Reply, at 2.*

[4] The statute of limitations ran for 52 days, between February 19, 2006, the date that petitioner's judgment of conviction became final, and April 12, 2006, when he filed his Rule 26(B) motion.

litigant's control." *Id.* at 560-61.

> The Supreme Court has explained that "[w]e have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). However, "[w]e have generally been much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights." *Id.; cf. Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S .Ct. 1723, 80 L.Ed.2d 196 (1984)("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.")

*Jurado v. Burt*, 337 F.3d 638, 642-43 (2003). In order to determine whether to equitably toll the statute of limitations, the Court must consider the following five factors:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Id.*, at 643, citing *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir.2001); *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir.1988).

Petitioner contends that this action is timely because his appellate counsel, Attorney Stokes, failed to advise him that he could file an appeal to the Ohio Supreme Court from the state appellate court's January 5, 2006, decision denying his direct appeal. *Memorandum in Support of Petition*, at 25. Petitioner hired Attorney Sanderson before the time period had expired to file a timely appeal to the Ohio Supreme Court; however, petitioner indicates

that Attorney Sanderson also failed to advise him that he could file an appeal to the Ohio Supreme Court, and instead, on April 12, 2006, filed a Rule 26(B) application on petitioner's behalf. *Id.*, at 25-26. On or about January 16,2007 (*see Exhibit 21 to Return of Writ*), petitioner attempted to file a delayed appeal to the Ohio Supreme Court; however, on January 17, 2007, the Clerk of the Ohio Supreme Court returned his filing for failure to comply with the rules of the Ohio Supreme Court.[5] On March 4, 2008, after obtaining the services of yet new counsel, Attorney Brandt (who represents petitioner in these

---

[5] In a letter dated January 17, 2007, the Deputy Clerk advised petitioner as follows:

> The enclosed documents were not filed and are being returned because they do not meet the requirements of the Rules of Practice of the Supreme Court of Ohio. The specific areas of noncompliance and relevant rules are as follows:
>
>> Your notice of appeal does not indicate that the case involves a felony and your motion for delayed appeal does not contain an affidavit in support of the facts as required by Rule II, Section 2(A)(4)(a).
>>
>> Your motion for delayed appeal does not include a certificate of service. Pursuant to Rule XIV, Section 2(C), all documents presented for filing with the Clerk's Office must contain a certificate of service.
>
> You may resubmit for filing your notice of appeal, motion for delayed appeal and affidavit of indigency once the above noted deficiencies are corrected. Please note, your memorandum in support of jurisdiction will not be due unless and until the Court grants your motion for delayed appeal. If it does, the Court will issue and [sic] entry and your memorandum in support of jurisdiction will be due 30 days from the date the Court grants your motion for delayed appeal.

*See Attachments to Exhibit 21 to Return of Writ.*

proceedings), petitioner filed a motion for delayed appeal in the Ohio Supreme Court.

Petitioner contends that the foregoing circumstances demonstrate abandonment of defense

counsel and that equitable tolling of the statute of limitations is therefore appropriate.

Petitioner further argues that, due to the misfeasance of his attorneys, he reasonably

remained unaware of the filing requirements.  *See Petitioner's Reply*.

Petitioner has submitted an affidavit in support of his petition, in which he indicates

in relevant part as follows:

> Attorney David Stokes represented me at trial and then on appeal to the Fifth Appellate District.  I had paid nearly $30,000 in legal fees, and I felt that Mr. Stokes was selling me out and not doing everything he could for me.
>
> In January 2006, I learned that the Fifth Appellate District denied relief.  I was very interested in continuing to fight on the issues raised in the Fifth District.  But Mr. Stokes failed to inform me of the next procedural step in a direct appeal, that being an appeal to the Ohio Supreme Court.  I had no other attorney helping me at the time.  I was relying upon Mr. Stokes to advise me of my rights and what to do about my case, including how to keep fighting against the injustices in this matter.
>
> Leading up to April 2006, I managed to get attorney Andrew Sanderson to look at my case.  He did not mention going to the Ohio Supreme Court []or suggest any action like that.  Instead, he recommended that we go back to the Fifth Appellate District with a motion to reopen the appeal.  Having no idea about the option of going to the Ohio Supreme Court, I went along with what Mr. Sanderson suggested, and he prepared and filed that motion to reopen.
>
> In August 2006, I learned from a civil attorney representing the Heath City Police Department that my motion to reopen was denied back in May 2006.  Mr. Sanderson never informed me

of that decision....

I learned that the notice of the denial of my motion to reopen had been sent to Mr. Stokes. I do not know why the Fifth Circuit sent the decision to Mr. Stokes and not Mr. Sanderson. No matter what, neither Mr. Stokes nor Mr. Sanderson ever let me know about it.

Around December 2006, I learned that once the Fifth Appellate District denied relief, the way to continue to fight on those issues was to go to the Ohio Supreme Court. Unfortunately, I had no money at the time to hire an[] attorney.... So in the beginning of January 2007, I quickly prepared a motion requesting delayed appeal to Ohio Supreme Court, and I had it filed as soon as I could. Unfortunately, around January 17, 2007, the clerk returned the materials to me for non-compliance with the rules of procedure.

Very recently, my family was able to raise money to hire attorney Jeffrey M. Brandt.

*Affidavit of Charles McCoy.*

Equitable tolling of the statute of limitations may be appropriate based on gross attorney malfeasance, so long as the petitioner was diligent in pursuing his claims. *See United States v. Martin*, 408 F.3d 1089, 1095-96 (8th Cir.2005)(defendant's reasonable reliance on attorney misrepresentations and "egregious attorney misconduct" warranted equitable tolling of the statute of limitations):

Ineffective assistance of counsel, where it is due to an attorney's negligence or mistake, has not generally been considered an extraordinary circumstance in this regard. *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir.2002); *see also Rouse v. Lee*, 339 F.3d 238, 248-49 (noting that a majority of the circuits have held that basic attorney errors such as miscalculation of a filing deadline are generally insufficient to support equitable tolling). We have acknowledged, though, that serious attorney

misconduct, as opposed to mere negligence, "may warrant equitable tolling." *Beery*, 312 F.3d at 952. Other circuits have also held that an attorney's misdeeds may equitably toll the statute of limitations. *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir.2003) (tolling state habeas petitioner's statute of limitations due to the "extraordinary circumstance" of egregious misconduct on the part of petitioner's attorney); *Baldayaque v. United States,* 338 F.3d 145, 152 (2d Cir. 2003) ("It is not inconsistent to say that attorney error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period while acknowledging that at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary."); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir.2002) (holding that petitioner's "allegation that he was deceived by his attorney into believing that a timely §2255 motion had been filed on his behalf presents a 'rare and extraordinary circumstance' beyond petitioner's control that could warrant equitable tolling of the statute of limitations" if petitioner reasonably relied on the attorney's misrepresentations); *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir.2001) (noting that claims of attorney misconduct may provide a basis for equitable tolling), *overruled on other grounds by Carey v. Saffold,* 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *cf. Rouse*, 339 F.3d at 250 n. 14 (suggesting that equitable tolling may be appropriate where attorney conduct reaches the level of "utter abandonment"); *but see Modrowski v. Mote*, 322 F.3d 965, 968-69 (7th Cir. 2003) (rejecting attorney misconduct as a basis for equitable tolling because such conduct is "attributable to the client").

*Baldayaque* and *Spitsyn* are particularly instructive. In *Baldayaque,* a federal prisoner sought § 2255 relief, and his wife specifically asked her husband's attorney to file a "2255." Thereafter, the attorney engaged in repeated misconduct. First, he told Baldayaque's wife that it was too late to file a §2255 motion, when in truth there was over a year remaining on his statute of limitations. Then, when pressed by Baldayaque's wife about the status of his case, the attorney "assured her that he was 'just waiting for a court date,' " although he had apparently not filed anything at that time. Later, the attorney filed a motion to modify Baldayaque's sentence, but it was

denied. Baldayaque was not notified about the motion or its denial; instead, the attorney informed his wife that there was nothing more they could do. Baldayaque later filed his own §2255 motion, which the district court denied as untimely. The Second Circuit reversed, finding that Baldayaque's attorney's conduct-not filing a §2255 motion despite a directive to do so, giving erroneous legal advice without performing even cursory research, and failing to communicate with his client-was "far enough outside the range of behavior that reasonably could be expected by a client that they may be considered 'extraordinary' " and a may provide a basis for tolling of the statute of limitations. *Baldayaque*, 338 F.3d at 152-53.

In *Spitsyn*, a state prisoner's mother hired a lawyer almost a full year before his habeas filing deadline. After months of inactivity, Spitsyn and his mother wrote to the attorney, but received no response. As the filing deadline approached, Spitsyn and his mother contacted the state bar association seeking assistance. Spitsyn also sent his attorney another letter asking for his file. The attorney did not respond to any of these letters before the filing deadline passed. Finally, after the deadline, the attorney sent a letter "expressing regret for not following through with the case and returning the Spitsyns' payment." Months later, the attorney returned Spitsyn's file. Spitsyn then filed a pro se habeas petition, which the district court dismissed as untimely. On appeal, the Ninth Circuit reversed, finding that "the misconduct of Spitsyn's attorney was sufficiently egregious to justify equitable tolling of the one-year limitations period under AEDPA." *Spitsyn*, 345 F.3d at 801.

*Id.*, at 1092-95.

In *Dial v. Beightler*, – F.Supp.2d –, 2010 WL 715689 (N.D. Ohio February 22, 2010), the United States District Court for the Northern District of Ohio similarly equitably tolled the running of the statute of limitations where the Ohio Supreme Court had permanently disbarred counsel representing the petitioner, in part due to his misconduct in that case,

because counsel had abandoned his client, "'lied about having completed legal work,'" and failed to return the criminal file, which required much additional time and effort by the petitioner to locate and purchase documents, including his trial transcript. *Id., citing Disciplinary Counsel v. Lord*, 114 Ohio St.3d 466, 873 N.E.2d 273 (2007) (*per curiam*). The District Court in *Dial* noted:

> *United States v. Wynn,* 292 F.3d 226, 230 (5th Cir. 2002) (holding that petitioner's "allegation that he was deceived by his attorney into believing that a timely §2255 motion had been filed on his behalf presents a 'rare and extraordinary circumstance' beyond petitioner's control that could warrant equitable tolling of the statute of limitations" if petitioner reasonably relied on the attorney's misrepresentations); *Nara v. Frank,* 264 F.3d 310, 320 (3d Cir. 2001) (noting that claims of attorney misconduct may provide a basis for equitable tolling), *overruled in part on other grounds by Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002).*
>
> The ordinary presumption that attorney negligence is not a ground for equitable tolling is reflective of the general rule that "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (internal quotation marks omitted); *see also Vermont v. Brillon, ---U.S. ----, ---- - ----, 129 S.Ct. 1283, 1290-1291, 173 L.Ed.2d 231 (2009).* This general rule is based on "well-settled principles of agency law." *Id. at 754 (citing Restatement (Second) of Agency § 242 (1958) (*master is subject to liability for harm caused by negligent conduct of servant within the scope of employment)).
>
> So too, the cases mentioned above as recognizing an exception to this principle also may be explained by reference to well-settled principles of agency law. That is because a principal is not typically bound by the acts of an agent where "the agent secretly is acting adversely to the principal and entirely for his own or another's purposes". Restatement

18

(Second) of Agency § 282 (1958); *see also Baldayaque v. United States*, 338 F.3d 145, 154 (2d Cir. 2003) (Jacobs, J., concurring) (finding "an evidentiary basis for concluding that the petitioner's lawyer was not acting as agent" where the lawyer "took a $5,000 retainer without undertaking the requested service; set aside his client's interests in favor of his own; and undertook a futile, unresearched, and frivolous initiative for the sole purpose of keeping the fee."). Where the attorney's representation of a client amounts to little more than a fraudulent scheme to obtain fees, habeas courts have found, consistent with ordinary agency principles, that the client should not be bound by the misdeeds of the wrongdoer.

*Id.*

Despite petitioner's arguments to the contrary, the record does not reflect such circumstances here. All of these cases have one thing in common: the failure of counsel to act diligently occurred in the context of preparing and filing either a habeas corpus petition or a motion to vacate sentence under 28 U.S.C. §2255. It makes sense that if an attorney is hired to pursue this type of relief, but then acts in a way that goes beyond mere negligence, the statute of limitations could be tolled in order for allow a potential petitioner to cure the problems created by the attorney who was hired to pursue habeas corpus relief. It would be an extraordinary case where the misfeasance of counsel during the course of state court proceedings would have an impact on the ability timely to file a federal habeas corpus action, and this does not appear to be that case.

Petitioner does not allege, nor does the record reflect, misrepresentations by counsel regarding the status of his case, gross malfeasance, or abandonment of the case as it pertains to filing a habeas corpus action. The "abandonment" he points to related to the

failure to pursue a direct appeal to the Ohio Supreme Court. Even then, he does not appear to have been totally abandoned by counsel. Attorney Sanderson, whom petitioner hired to replace attorney Stokes, did not fail to take action on petitioner's behalf. Rather, he did pursue relief in the form of a 26(B) motion. Further, his failure to advise petitioner of the denial of that motion may well have been, as petitioner points out, due to the fact that the state court notified attorney Stokes rather than attorney Sanderson of the denial. Petitioner claims to have learned of the denial of his Rule 26(B) motion in August, 2006. At that point, he still had approximately seven months within which to file a federal habeas corpus petition. Rather than doing so, he attempted, unsuccessfully, to file a delayed direct appeal to the Ohio Supreme Court in January of 2007, and then did nothing for more than a year after being told that his appeal was procedurally defective. It was during that year that the statute of limitations ran.

It is not clear why this Court should consider the actions or inactions of counsel in connection with petitioner's effort to perfect an appeal to the Ohio Supreme Court as grounds for equitable tolling. Certainly, petitioner was not entitled to the effect assistance of counsel in proceedings before the Ohio Supreme Court. *Ross v. Moffitt*, 417 U.S. 600, 617 (1974); *see also Lopez v. Wilson*, 426 F.3d 339, 355 (6th Cir. 2005)(en banc). Further, petitioner apparently had possession of the information that allowed him to attempt to pursue an appeal to the Ohio Supreme Court. He has not alleged that either attorney Stokes or attorney Sanderson withheld his file or took any action which made it difficult or impossible for him to use that same information to pursue federal habeas corpus relief in

a timely fashion. Thus, this is not a case like those cited above where the attorney's gross misconduct occurred during the course of the pursuit of habeas corpus relief, or relief under §2255, and actually prevented the filing of a timely petition.

As an apparent effort to relate the state court attorneys' actions or inactions to his failure timely to file a federal habeas corpus petition, petitioner cites to *Griffin v. Rogers*, 399 F.3d 626, 637 (6th Cir. 2005), as support for the proposition that an attorney's failure to advise a petitioner of the right to file an appeal to the Ohio Supreme Court, and of the requirements for doing so, can constitute grounds for equitable tolling of the statute of limitations. This Court is not persuaded by this argument. In *Griffin v. Rogers, supra*, the United States Court of Appeals for the Sixth Circuit held that the equitable tolling of the statute of limitations was appropriate despite petitioner's failure to pursue state court action for more than six months after her initial habeas corpus petition had been dismissed as unexhausted, because the law was unclear, at that time, of the filing requirements under those circumstances:

> The Supreme Court has acknowledged that equitable tolling is sometimes appropriate when a litigant has received inadequate notice. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Indeed, "[e]quitable tolling focuses primarily on the *plaintiff's* excusable ignorance of the limitations period." *Lehman v. United States,* 154 F.3d 1010, 1016 (9th Cir.1998) (emphasis in original). Along these lines, Griffin contends that she had no reason to know that she was required to file within 30 days of her dismissal from federal court. This contention is difficult to rebut. This 30-day window was adopted by the *Palmer* Court in January 2002, drawing on the Second Circuit's 2001 opinion in *Zarvela.* Yet Griffin failed to file within this 30-day window in October

1998, over three years before the time frame was adopted in this circuit. Moreover, nothing in the District Court's dismissal indicated that Griffin need bring her state proceeding by a certain deadline or within a certain time frame....

***

The AEDPA statute itself did not provide notice as to how Griffin should proceed. Pursuant to the 2001 Supreme Court opinion in *Duncan*, Griffin's limitations period had already expired when her petition was dismissed in September 1998. Even had Griffin filed her *Murnahan* application instantaneously, she would not have been able to take advantage of the statutory tolling provisions. But at the time of dismissal, Griffin and her attorney were ignorant of this expiration just as was the District Court that dismissed the petition. From the get-go, she was in the middle of a process with undefined rules. Neither the District Court's dismissal, the statute, nor the case law gave her any notice of what deadlines should be observed in order to preserve the timeliness of her federal petition. To be certain, "ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole,* 945 F.2d 1331, 1335 (6th Cir.1991). But, Griffin's ignorance of the filing deadline given the unstable and unsettled nature of AEDPA at the crucial time of mistake was reasonable and supports her argument for tolling.

*Id.*

Again, this decision relates to actions which have a direct affect on the ability to file a federal habeas corpus action in a timely fashion. Those are simply are not the circumstances here. As the court in *Hines v. Brunsman,* 2010 WL 750176 (N.D. Ohio February 26, 2010) explained,

[T]he Sixth Circuit has held that a petitioner is charged with having constructive knowledge of his filing deadline through published case law and the statutory provisions of the AEDPA and, therefore, cannot remain reasonably ignorant of his

deadline. *See, e.g., Harvey v. Jones*, 179 Fed. Appx. 294, 300 (6th Cir. 2006) (holding that the petitioner could not have remained reasonably ignorant of his filing deadline until 2003 because a published Sixth Circuit decision in 2001 "informed" the petitioner of when the limitations period would begin to run); *Allen*, 366 F.3d at 403 ("Because of this court's decision in *Austin* and AEDPA's clear provisions regarding the statute of limitations, [the petitioner] cannot claim a lack of constructive knowledge regarding the filing deadline."); *McClendon v. Sherman*, 329 F.3d 490, 495 (6th Cir. 2003)... *see also Allen v. Bell*, 250 Fed. Appx. 713, 715-16 (6th Cir.2007) (holding that petitioner could not claim a lack of constructive knowledge that the statute of limitations did not start to run until after the conclusion of his state post-conviction proceedings, because of published case law and the statutory provisions of the AEDPA).

Here, any contention that petitioner lacked notice or constructive knowledge of the one-year filing requirement in habeas corpus cases, or that it would have been reasonable for him to remain ignorant of the statute of limitations in habeas corpus cases, which has been in effect since 1996, simply is not persuasive. Lack of actual notice or "ignorance of the law, even for an incarcerated *pro se* petitioner generally does not excuse [late] filing." *Fisher v. Johnson*, 174 F.3d 710, 714-15 (5th Cir. 1999); *see also United States v. Baker*, 197 F.3d 211, 218 (6th Cir.1999); *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir.1991).

Even those not versed in the law recognize the centuries-old maxim that "ignorance of the law is no excuse." This maxim, deeply embedded in our American legal tradition, reflects a presumption that citizens know the requirements of the law. The benefits of such a presumption are manifest. To allow an ignorance of the law excuse would encourage and reward indifference to the law. Further, the difficulty in proving a defendant's subjective knowledge of the law would hamper criminal prosecutions.

*United States v. Baker, supra,* 197 F.3d at 218.

> [W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness[.]

*Johnson v. United States,* 544 U.S. 295, 311 (2005).

> [Y]outh, relative lack of education, and ... lack of legal knowledge are not ... extraordinary circumstances. *See, e.g., Montenegro v. United States,* 248 F.3d 585, 594 (7th Cir.2001) (equitable tolling not justified by lack of response from attorney, language barrier, lack of legal knowledge, and transfer between prisons), *overruled on other grounds by Ashley v. United States,* 266 F.3d 671 (7th Cir.2001). As the Seventh Circuit said recently in *Williams v. Sims,* 390 F.3d 958 (7th Cir. 2004), even reasonable mistakes of law made by *pro se* litigants are not a basis for equitable tolling. *Id.* at 963. Otherwise, "statute of limitations would have little bite, and no value at all to persons or institutions sued by people who don't have ... any lawyers." *Id.*

*Granberry v. Frank,* unpublished, 2005 WL 2465911 (E.D. Wisconsin, October 6, 2005).

Finally, respondent will be sure to suffer some prejudice, if only in terms of additional time and expense, if this Court were to equitably toll the running of the statute of limitations in this case. *See Jurado v. Burt, supra.* Consequently, after considering all of the applicable factors which inform the Court's decision about equitable tolling, the Court concludes that this doctrine does not save petitioner from the consequences of his admittedly untimely filing.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within

fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge